FILED

2016 Sep-21  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **JENNY OSBORN KIRBY et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:16-CV-776-VEH** |
| | ) |
| **AMERICAN UNITED LIFE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

---

## MEMORANDUM OPINION

## I.   INTRODUCTION AND PROCEDURAL HISTORY

This civil action was originally filed on April 5, 2016, in the Circuit Court of Etowah County, Alabama, by the Plaintiffs, Jenny Osborn Kirby and Jacqueline Sue Skelton, as the co-trustees of the Virginia B. Osborn Descendants Trust (the "Trust"). (Doc. 1-1 at 7). The Plaintiffs sued the Defendant, American United Life Insurance Company ("AUL"), and asserted state law claims for breach of contract, breach of covenant of good faith and fair dealing, fraudulent inducement, unjust enrichment, intentional false statement, and promissory estoppel arising out of a dispute over a life insurance policy issued by AUL (the "Policy"). (Doc. 1-1 at 7).

On May 11, 2016, the Defendant removed the case to this Court alleging

> Plaintiffs could have originally filed this action against AUL in this Court pursuant to 29 U.S.C. § 1132 in that Plaintiffs seek, inter alia, to recover benefits under the Policy provided pursuant to an employee welfare benefits plan governed by [the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1101, *et seq.* ("ERISA")].

(Doc. 1 at 3). Further, the Notice of Removal argued that the Plaintiff's state law claims were completely preempted by ERISA. (Doc. 1 at 3) *(citing See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987); *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1353 (11th Cir. 1998); *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)).

On June 30, 2016, the Plaintiffs filed an Amended Complaint which contains three counts. (Doc. 10). In Count One, the Plaintiffs seek relief, under ERISA, pursuant to 29 U.S.C. § 1132(a)(1)(B). In Count Two, the Plaintiffs seek relief, under ERISA, pursuant to 29 U.S.C. § 1132(a)(3). Count Three seeks an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). The Plaintiffs have abandoned all state law claims.

The case comes before the Court on AUL's motion to dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. (Doc. 14). For the reasons stated herein, the motion will be **GRANTED**.

## II.    STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most

favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir.

2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## III.   ALLEGATIONS IN THE AMENDED COMPLAINT

### A.   <u>Allegations in the Complaint</u>

The following allegations appear in the Plaintiffs' Amended Complaint:

7.     In or around 1993, Mrs. Virginia B. Osborn ("Mrs. Osborn") began planning her estate. Due to the complexity of her estate, Mrs. Osborn wanted to ensure it would be able to pay any future tax liabilities.

8.     Mrs. Osborn estimated her estate would need to pay approximately $10,000,000 in future tax liabilities.

9.     To ensure her estate could pay this estimated amount, Mrs. Osborn's employer, Osborn Transportation, Inc. entered into an agreement with Plaintiffs which required it to fund a life insurance policy (hereinafter "Split Dollar Plan") for Plaintiffs' benefit. The Split Dollar Plan was to be operated and administered "in compliance with ERISA."

10.     On or about September 1, 1993, Mrs. Osborn completed Defendant's insurance policy application. The application contained the following statement: "This is a funding vehicle for family trust funded through split dollar from company. Company valued at 20 mill-requesting 10 mill policy."

11.     In response to the aforementioned insurance application, AUL issued Policy #1617711350 ("Policy") to the Trust on September 28, 1993. The Policy was comprised of two parts: (1) a $5,500,000.00 whole life policy and (2) a $4,500,000.00 term insurance policy. Together, these policies totaled $10,000,000 in coverage. The Policy designated the Trust as the sole beneficiary.

12.     Upon receipt of both oral and written affirmations from AUL, the plan's fiduciary, that the Policy would, in fact, pay out at least $10,000,000 upon Mrs. Osborn's death, the Policy was purchased and Osborn Transportation, Inc. began paying $318,348.00 in annual premiums.

13.     For 22 years, from 1993 and until Mrs. Osborn's death in 2015, Osborn Transportation, Inc. timely made annual premium payments of $318,348.00—a total of $7,003,656.

14.     During this time, Mrs. Osborn and/or her agents would routinely contact AUL and/or its agents to confirm the payout of the Policy would be at least $10,000,000—as originally promised.

15.     For example, Greg Frith ("Frith"), an insurance agent and friend of Mrs. Osborn, contacted AUL almost yearly on Mrs. Osborn's behalf.

16.     In each of his conversations with AUL, Mr. Frith would verify that the Trust's Policy payout would be $10,000,000. AUL always confirmed the $10,000,000 payout, never once indicating otherwise to Mr. Firth.

17.     Mrs. Osborn died on January 14, 2015.

18.     On January 19, 2015, Plaintiffs notified AUL of Mrs. Osborn's death and initiated a claim under the Policy.

19.     On July 22, 2015, AUL notified Plaintiffs that the Policy would not pay out $10,000,000, but rather approximately $8,560,000. AUL's Policy payout was comprised of (1) $5,500,000 from the whole life policy; (2) $1,573,748 from the one year term; (3) $67,475 pro rata dividend; (4) $1,237,038 for paid up additions; and (5) $187,263 interest.

20.     By Plaintiffs' accounting and according to the insurance policy, they are owed approximately $1,500,000.00 plus interest.

(Doc. 10 at 4-6, ¶¶7-20).

**B.**   **Policy Provisions**[1]

The Policy was issued on September 28, 1993. (Doc. 1-2 at 4). The "Whole Life" portion of the Policy provided for payment of "$5.5 million" "to age 100" and required the payment of an annual premium of "$318,340.00." (Doc. 1-2 at 4). The aforementioned $4.5 million in "Additional Term Insurance" provided by the Policy:

– had an express "Expiry Date" of September 28, 1995 (doc. 1-2 at 4);

– provided that it would have a "1st Year Benefit" of $4.5 million, and a "2nd Year Benefit" of $4.5 million (doc. 1-2 at 4); and

– required no annual premium (doc. 1-2 at 4).

The Policy also expressly provided that the agreement for Additional Term Insurance "will automatically terminate: (a) on the Date of Expiry of this agreement." (Doc. 1-2 at 13). The "Amount of Insurance" listed on the Policy "Specifications" page was "$5.5 million." (Doc,. 1-2 at 4).

The Policy stated that AUL would determine "the share of divisible surplus of this policy each year" to be credited as a dividend. (Doc. 1-2 at 7). To the extent a

---

[1]  The Court may consider the contents of the Policy without converting the motion to a motion for summary judgment because the document is central to the Plaintiffs' claims and is "undisputed" in the sense that the authenticity of the document is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)

dividend was credited in any given year, it could then be applied pursuant to 1 of 8 options, chosen at the Owner's direction. (Doc. 1-2 at 7-8). The Trust chose to have the dividends applied pursuant to Dividend Option 8 in the Policy. Dividend Option 8 states:

> **8. Additional Insurance.** Any dividend payable at the end of the first policy year is applied to purchase participating paid-up life insurance for a level amount. Each year thereafter, the dividend is used to purchase a combination of one year term insurance and paid-up additions in an amount such that the one year term insurance plus all paid-up additions equals the net specified amount. The net specified amount is the specified amount shown on page 3 reduced by the face amount of any paid-up additions previously surrendered.
>
> If the dividend is not large enough to make the above purchase, the entire dividend will be used to buy one year term insurance. If all paid-up additions equal or exceed the net specified amount, the entire dividend will be used to buy paid-up additions.

(Doc. 1-2 at 8) (bold font in original).

## IV.   ANALYSIS

### A.   <u>The Breach of Fiduciary Duties Claim in Count II Fails</u>

Count II of the Amended Complaint asserts a claim, pursuant to 29 U.S.C. § 1132(a)(3), otherwise known as ERISA Section 502(a)(3), for breach of the fiduciary duties set out in 29 U.S.C. §§ 1104. AUL contends that the Plaintiffs' claim under Section 502(a)(3) is inappropriate, given that the Plaintiffs have an adequate remedy available:  failure to pay benefits under ERISA Section 502(a)(1)(B), codified as 29

U.S.C. § 1132(a)(1)(B), as set out in Count I. The court agrees.

The Plaintiffs allege that the Federal Rules of Civil Procedure allow pleading of these ERISA claims in the alternative. (Doc. 15 at 5-6) (citing FED. R. CIV. P. 8(d)). They are wrong. Section 502(a)(1)(B) of ERISA, codified as 29 U.S.C. § 1132(a)(1)(B), permits a civil action to be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In comparison, Section 502(a)(3), codified as 29 U.S.C. § 1132(a)(3), permits a civil action to be brought:

> [B]y a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of [the] subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to address such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). In *Varity Corp v. Howe*, 516 U.S. 489, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996), the Supreme Court made clear that an ERISA plaintiff could not state a valid claim for equitable relief under Section 502(a)(3) when Section 502(a)(1) afforded the plaintiff an adequate remedy. Rather, Section 502(a)(3) is a catch-all provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere remedy." *Id.* at 512, 116 S. Ct. at 1065. Where Congress has elsewhere "provided adequate relief for a

beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate.'" *Id.* at 515, 116 S. Ct. at 1079.

Eleventh Circuit cases applying *Varity* have explained that, if a plaintiff can pursue benefits under the plan "pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." *Ogden v. Blue Bell Creameries U.S.A. Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003). An ERISA plaintiff cannot state a valid claim for equitable relief under Section 502(a)(3) when Section 502(a)(1)(b) would afford an adequate remedy, even if the Section 502(a)(1)(B) claim is later lost on the merits. *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1089 (11th Cir. 1999) ("[T]he availability of an adequate remedy under the law for *Varity* purposes does not mean, nor does it guarantee, an adjudication in one's favor.").

The relevant question, as the Eleventh Circuit has concluded, is whether the plaintiff has a cause of action "*based on the same allegations*" under the other specific remedial provisions of ERISA. *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1073 (11th Cir. 2004) (emphasis added). The court must dismiss the 502(a)(3) claim if the allegations supporting that claim are "also sufficient to state a cause of action under Section 502(a)(1)(B), regardless of the relief sought, and irrespective of the [plaintiff's] allegations supporting their other claims." *Id.* at 1073-

9

74. The facts that comprise the basis for the claim, rather than the type of relief requested, control whether a plaintiff can proceed with a claim for equitable relief. *Id.* at 1073. *See also, Pruitt v. Am. Gen. Life Ins.*, No. 4:14-CV-1162-TMP, 2015 WL 1524412, at *2 (N.D. Ala. Apr. 3, 2015) (Putnam, M.J.) ("alternative pleading is not permitted [in ERISA]"); *Till v. Lincoln Nat. Life Ins. Co.*, No. 2:14-CV-721-WKW, 2014 WL 6895285, at *5 (M.D. Ala. Dec. 5, 2014) (Watkins, J.) (rejecting alternative pleading theory).

In this case, the Plaintiffs' Section 502(a)(1)(B) and Section 502(a)(3) claims are supported by the same factual allegations. Therefore, they cannot bring their claims based on Section 502(a)(3) because they have an adequate remedy available elsewhere in ERISA's statutory framework. *See Ogden*, 348 F.3d at 1288 (citing *Hembree v. Provident Life and Accident Ins. Co.*, 127 F. Supp. 2d 1265, 1274 (N.D. Ga. 2000)). ERISA simply does not permit a plaintiff to pursue an equitable claim when an adequate remedy to pay benefits exists. Accordingly, the Plaintiffs' claim for breach of fiduciary duty (Count II) is due to be dismissed.

## B.   The Failure To Pay Benefits Claim in Count I Fails

The Additional Term Insurance expired on September 28, 1995. Osborn died on January 14, 2015. Accordingly, the Plaintiffs are not entitled to the $4.5 million in term life insurance benefits under the Policy. Further, even if they were, the

Plaintiffs' claim is barred by the six year statute of limitations. *See, Wilson v. Standard Ins. Co.*, No. 4:11-CV-02703-MHH, 2014 WL 358722, at *5 (N.D. Ala. Jan. 31, 2014) (Haikala, J.), aff'd, 613 F. App'x 841 (11th Cir. 2015) (recognizing application of Alabama's six year statute of limitations to claim brought pursuant to ERISA for policy benefits); *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1357 (11th Cir. 1998) ("[A] fiduciary's action to enforce a reimbursement provision pursuant to 29 U.S.C. § 1132(a)(3) is most closely analogous to a simple contract action brought under Alabama law.  Accordingly, we apply Alabama's six-year statute of limitations for simple contract actions[.]").

The Plaintiffs do not dispute that the Additional Term Insurance had expired by the time of Osborn's death, or that the six year statute of limitations applies. Instead, they argue that "AUL made *annual* representations and promises to the Trustees and their agents that the Policy payout would, in fact, be ten million dollars." (Doc. 15 at 2-3). The Plaintiffs argue that "[t]hese annual misrepresentations now estop AUL from denying the Trustees the benefits they were promised and pleading a statute of limitations defense." (Doc. 15 at 3).

"Under ERISA, equitable estoppel applies only when 'the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an

11

informal interpretation of the ambiguity.'" *Griffin v. Habitat for Humanity Int'l, Inc.*, 641 F. App'x 927, 932 (11th Cir. 2016) (*quoting Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d at 1069); *Urscheler v. Adventist Health Sys. Sunbelt Healthcare Corp.*, No. 8:16-CV-224-T-27-TBM, 2016 WL 3702976, at *3 (M.D. Fla. July 7, 2016) (Whittemore, J.) (same). The Plaintiffs have failed to allege or argue that any provision of the Policy is ambiguous, or that anyone at AUL made representations to them regarding <u>an ambiguous provision</u>.[2] Further, at least as far as the expiration of the Additional Term Insurance, the plan unambiguously states that it expired on September 28, 1995. The doctrine of estoppel does not apply to save the Plaintiffs' claims.[3]

### C.    The Attorneys' Fee Claim in Count III Fails

Under ERISA, the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C.A. § 1132(g)(1). As the Plaintiffs' other claims are without merit, no fee is due to the Plaintiffs.  Count III will also be

---

[2]  The Plaintiffs argue only that AUL represented that the Policy payout would be $10,000,000.

[3]  Further, this equitable estoppel claim fails because it is raised for the first time in response to the motion to dismiss, and "plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (*citing Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir.2009)).  However, the Court has applied a merits analysis.  That analysis shows that any amendment to add this claim would be futile.

dismissed.[4]

## V.     CONCLUSION

Based on the foregoing, the motion to dismiss will be **GRANTED**, and this

case will be **DISMISSED with prejudice**.

**DONE** and **ORDERED** this 21st day of September, 2016.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[4]  The Defendant has not asked to be awarded a fee.